IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS WOFFORD,                           07-CV-192-BR

      Plaintiff,

                          OPINION AND ORDER

v.

MAX WILLIAMS, Director of
DOC; GINGER MARTIN, Assistant
Director of Transitional
Services; TIM O'CONNOR,
Administrator of Religious
Services; STEVEN TOTH,
Chaplain SRCI; JEAN HILL,
Superintendent SRCI; JUDY
GILMORE, Assistant
Superintendent SRCI; and
REBECCA PRINSLOW, Inspector
General for DOC,

      Defendants.

THOMAS WOFFORD
Id #7966358
Snake River Correctional Institution
777 Stanton Blvd
Ontario, OR 97914

      Plaintiff, *Pro Se*

1 - OPINION AND ORDER

**HARDY MYERS**
Attorney General
**JACQUELINE SADKER**
Assistant Attorneys General
1162 Court Street N.E.
Salem, OR 97301-4096
(503) 947-4700

      Attorneys for Defendants

**BROWN, Judge.**

      This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction (#36) and Defendants' Motion for Summary Judgment (#54).  For the reasons that follow, the Court **GRANTS** Plaintiff's Motion and **DENIES** Defendants' Motion.


<u>**BACKGROUND**</u>

      Plaintiff, an inmate at Snake River Correctional Institution (SRCI) brings this action against Defendants for allegedly refusing to provide him with a Kosher diet at Snake River Correctional Institution (SRCI) in violation of Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C § 2000cc-1(a); Plaintiff's rights under the First Amendment to the United States Constitution; and Plaintiff's right to equal protection under the law.  Plaintiff seeks the following relief:  (1) an injunction requiring Defendants to provide him with Kosher meals, (2) a declaration that Defendants are in violation of RLUPIA for failing to provide

2 - OPINION AND ORDER

Kosher meals to Plaintiff, (3) a declaration that Defendants are in violation of the First Amendment for failing to provide Kosher meals to Plaintiff, and (4) a declaration that Defendants are denying Plaintiff equal protection under the law by failing to provide him with Kosher meals.

On December 3, 2007, Plaintiff filed a Motion for Preliminary Injunction in which he requests the Court to order Defendants to provide him with Kosher meals.

On March 3, 2008, Defendants filed a Motion for Summary Judgment as to all of Plaintiff's claims and a Response to Plaintiff's Motion for Preliminary Injunction in which they relied on their arguments in their Motion for Summary Judgment.

## STANDARDS

### I.  Summary Judgment.

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

3 - OPINION AND ORDER

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of

the claim, the court may grant summary judgment.  *Id.*

## II. Preliminary Injunction.

"To obtain a preliminary injunction, a moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised, and the balance of hardships tips sharply in favor of the moving party." *Meredith v. Oregon*, 321 F.3d 807, 815 n.8 (9th Cir. 2003)(citing *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)).  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Prudential Real Estate Affiliates v. PPR Realty, Inc.* 204 F.3d 867, 874 (9th Cir. 2000).


### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As noted, Defendants move for summary judgment as to all of Plaintiff's claims.

Plaintiff is a Seventh Day Adventist.  Plaintiff asserts his faith requires him to eat foods as set out in Leviticus, Chapter 11, of the Bible.  To comply with the requirements of Leviticus, Plaintiff asserts he must eat a Kosher diet, and, therefore, he requested Defendants to provide him with Kosher meals.

Defendants denied his requests on the grounds that Kosher meals are allowed only for Jewish inmates and Plaintiff's faith

5 - OPINION AND ORDER

does not require him to eat a Kosher diet.

**I.    Plaintiff's First-Amendment Claim.**

"Prisoners 'do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" *Shakur v. Schriro*, 514 F.3d 878, 883 (9th Cir. 2008)(quoting *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).  "Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" *Id*. at 883-84 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  "'Lawful incarceration[, however,] brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* (quoting *O'Lone*, 482 U.S. at 348).

**A.    Defendants' refusal to provide Plaintiff with Kosher meals implicates the First Amendment.**

As a preliminary matter, Defendants agree the Seventh Day Adventist religion advocates dietary restrictions; in particular, Seventh Day Adventists must eat a healthful diet and abstain from eating "unclean" meats identified in Leviticus such as rabbit and pig, but Defendants assert Plaintiff is not required to eat a Kosher diet as a central tenet of his religion. Defendants assert the vegetarian and self-selection items served at SRCI satisfy the requirements of Plaintiff's religious dietary

6 - OPINION AND ORDER

restrictions.

In *Shakur*, the Ninth Circuit addressed whether an inmate must establish that a central tenet of his faith is violated by a prison regulation in order to raise a viable claim under the First Amendment.  After reviewing a number of earlier Ninth Circuit cases and the Supreme Court's decision in *Hernandez v. C.I.R.*, 490 U.S. 680 (1989), the Ninth Circuit rejected the "centrality test" and concluded a plaintiff must merely establish his belief is sincerely held and the desired practice is "rooted in [his] religious belief."  *Id*. at 885.  The Ninth Circuit noted the Supreme Court's admonition in *Hernandez* that "'[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'"  *Id*. at 884 (quoting *Hernandez,* 490 U.S. at 699).  The Supreme Court also noted in *Employment Division, Department of Human Resources v. Smith*, that

> [i]t is no more appropriate for judges to determine the centrality of religious beliefs before applying a compelling interest test in the free exercise field, than it would be for them to determine the importance of ideas before applying the compelling interest test in the free speech field.

494 U.S. 872, 886-87 (1990).  Moreover, the Ninth Circuit held in *Shakur* that the plaintiff's "sincere belief that he is personally required to consume Kosher meat to maintain his spirituality"

7 – OPINION AND ORDER

established, "as a threshold matter," that the prison's refusal to provide him with Kosher meat implicated the plaintiff's rights under the First Amendment.  *Shakur*, 514 F.3d at 885.

Here after Plaintiff was interviewed by Steven Toth, Chaplain of SRCI, Toth rated Plaintiff "high" in terms of his religious sincerity in seeking to follow his faith and religious beliefs about food.  In addition, Plaintiff has provided support for his belief that eating a Kosher diet is "rooted in his religion" through the text of Leviticus as well as an Oregon Department of Corrections Handbook of Religious Beliefs in which it is noted "most Adventists adhere to a vegetarian diet while other Adventists follow a Kosher diet."

Based on this record, the Court concludes Plaintiff has established as a threshold matter that Defendants' refusal to provide him with a Kosher diet implicates Plaintiff's rights under the First Amendment.

   **B.    Factors under *Turner v. Safley*.**

If a prison regulation impinges on an inmate's constitutional rights, "'the regulation is valid if it is reasonably related to legitimate penological interests.'" *Shakur*, 514 F.3d at 884 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987).  *See also Ward v. Walsh*, 1 F.3d 873, 876-77 (9th Cir. 1993)(*Turner* still applies to prisoners' claims of free exercise of religion after *Employment Division, Dep't of Human Res.*).

8 - OPINION AND ORDER

The Supreme Court sets out four factors in *Turner* that must be weighed when determining whether a prison regulation is reasonably related to legitimate penological interests:

> (1) [w]hether there is a "valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";
>
> (2) [w]hether there are "alternative means of exercising the right that remain open to prison inmates";
>
> (3) [w]hether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally"; and
>
> (4) [w]hether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

482 U.S. at 89-90 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

Although Defendants do not address the *Turner* factors individually, Defendants assert their arguments as to Plaintiff's RLUIPA claim subsume their arguments as to Plaintiff's First-Amendment claim. The Court, therefore, will extrapolate Defendants' arguments as to Plaintiff's First-Amendment claim from their arguments as to RLUIPA.

**1.    First *Turner* Factor.**

The first *Turner* factor "requires [the Court] to determine whether there was a legitimate penological interest that is rationally related to the disputed regulation." *Shakur*,

514 F.3d at 885 (citing *Turner*, 482 U.S. at 89).

Defendants contend the Oregon Department of Corrections (ODOC) policy limiting Kosher meals to Jewish inmates is related to the cost of providing Kosher meals.  Plaintiff, however, asserts ODOC already provides Kosher meals to Jewish inmates; has a system in place to screen inmates for the sincerity of their belief and commitment to eating a Kosher diet; and could add one more meal to its Kosher meal system at a very low cost.

In *Shakur*, the parties presented similar arguments.  The Ninth Circuit found

> [a]lthough the marginal cost and administrative burden of adding Shakur to the roster of Kosher-diet inmates would be small or even negligible, we cannot conclude that no rational nexus exists between ADOC's dietary policies and its legitimate administrative and budgetary concerns.  ADOC could rationally conclude that denying Muslim prisoners Kosher meals would simplify its food service and reduce expenditures.

*Shakur*, 514 F.3d at 886.

Thus, in circumstances similar to this case, the Ninth Circuit concluded the first *Turner* fact weighed in favor of the Department of Corrections.  Similarly, this Court cannot conclude "no rational nexus exists between" ODOC's dietary policies and its legitimate budgetary concerns even though the cost of adding Plaintiff to the list of inmates who receive a Kosher diet would be small or even negligible.

Accordingly, the Court concludes this factor weighs in favor of Defendants.

### 2. Second *Turner* factor.

Under the second *Turner* factor, the Court "consider[s] whether [Plaintiff] has alternative means by which he can practice his religion or is denied all means of religious expression." *Id*. (quotation omitted). In *Shakur*, it was undisputed that the plaintiff had "numerous other means of practicing his religion," including keeping a copy of the Qur'an, up to seven religious items, and a prayer rug in his cell and receiving visits from an Imam upon request. *Id*. Here, however, the parties did not present any evidence of the other ways in which Plaintiff can practice his religion at SRCI; *i.e.,* Plaintiff does not allege he was denied other means of worship, and the record is devoid of evidence that goes to this *Turner* factor. The Court, therefore, concludes genuine issues of material fact exist as to whether Plaintiff has alternative means of practicing his religion.

Accordingly, the Court concludes Defendants have not established ODOC has satisfied the second *Turner* factor.

### 3. Third *Turner* factor.

Under the third *Turner* factor, the Court must "consider the impact [the] accommodation . . . will have on guards and other inmates, and on the allocation of prison

11 - OPINION AND ORDER

resources generally." *Shakur*, 514 F.3d 887 (quoting *Ward v. Walsh*, 1 F.3d 873, 878 (9th Cir. 1993)).

Defendants contend if they made an exception to the ODOC policy to provide Kosher meals only to Jewish inmates, "[o]ther religions like Messianic Jews and Muslims who have requested a kosher diet in the past and been denied would expect the same or other exceptions to be made for them."  The Ninth Circuit rejected a similar argument in *Shakur* and "discounted the favoritism argument" because that "effect 'is present in every case that requires special accommodations for adherents to particular religious practices.'"  *Id*. (quoting *Ward*, 1 F.3d at 878).

Defendants also contend if all of the approximately 2,757 Seventh Day Adventist inmates incarcerated in ODOC facilities insisted on a Kosher diet, it would cost ODOC $5.5 million per year to provide those meals.  The Ninth Circuit again addressed a similar argument in *Shakur*.  In that case, the defendants asserted it would cost an additional $1.5 million annually to provide all 850 of its Muslim inmates with Kosher meals and millions of dollars to provide them with Halal meat.  The Ninth Circuit noted there was not any evidence in the record to suggest the defendants actually investigated providing Kosher meat to all Muslim prisoners, "which could potentially result in economies of scale that would reduce the overall cost of the

12 - OPINION AND ORDER

meals," or that other Muslim prisoners would demand Kosher meals if the plaintiff's request was granted.  *Id*. at 887.  The Ninth Circuit concluded it could not determine whether the defendants would prevail on the third *Turner* factor on the record before it. *Id*.

Here there also is not any evidence that Defendants actually investigated whether other Seventh Day Adventist inmates would demand Kosher meals if Defendants granted Plaintiff's request.  In fact, the record reflects some Seventh Day Adventists follow a Kosher diet and some do not, and, in addition, ODOC has a system in place to evaluate whether inmates are sincere in the belief that keeping a Kosher diet is required by their faith.

On this record, the Court concludes the third *Turner* factor favors Plaintiff.

**4.    The fourth *Turner* factor**.

The fourth Turner factor requires the Court "to consider whether 'there are ready alternatives to the prison's current policy that would accommodate [the plaintiff] at *de minimis* cost to the prison.'"  *Id*. (quoting *Ward*, 1 F.3d at 879). The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns."  *Id*. (quoting *Turner*, 482 U.S. at 90).

Plaintiff contends the Kosher diet that Defendants

already provide to Jewish inmates would satisfy Plaintiff's

religious requirements.  As noted, although Defendants assert

providing this diet to all of its Seventh Day Adventist inmates

would be prohibitively expensive, the government has not

adequately supported its assertion that all Seventh Day Adventist

inmates would request or qualify for a Kosher diet.  In addition,

as the Ninth Circuit noted in *Shakur*

> the fact that ADOC already provides Jewish inmates
> with Kosher meals that cost $5 per day more than
> the standard meal, and orthodox Kosher meals that
> cost three to five times more, "casts substantial
> doubt on [its] assertion that accommodating
> [Shakur's] request would result in significant
> problems for the prison community."  *DeHart*, 227
> F.3d at 58; *see also Ashelman v. Wawrzaszek*, 111
> F.3d 674, 678 (9th Cir. 1997)("The evidence also
> shows that the prison accommodates the dietary
> requirements of other religious groups . . .
> without disruption.  Under these circumstances, it
> does not appear that the difficulties envisioned
> by the prison are insurmountable.").

*Id*.

On this record, the Court concludes Defendants have not

established that providing Plaintiff with a Kosher diet would

place more than a *de minimis* burden on Defendants.

In summary, the Court concludes Defendants have not

established the *Turner* factors weigh in their favor.  In

addition, the Court finds genuine issues of material fact exist

as to Plaintiff's First-Amendment claim.  Accordingly, the Court

denies Defendants' Motion for Summary Judgment as to Plaintiff's

First-Amendment claim.

14 - OPINION AND ORDER

## II.  Plaintiff's RLUIPA Claim.

Plaintiff asserts Defendants' refusal to provide him with a Kosher diet violates his rights under RLUIPA.

RLUIPA provides in pertinent part that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability" unless the government establishes the burden is "in furtherance of a compelling government interest" and is "the least restrictive means of furthering that . . . interest."  42 U.S.C. § 2000cc-1(a).  RLUIPA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under *Turner*."  *Shakur*, 514 F.3d at 888 (citing *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).  The Supreme Court has noted "RLUIPA . . . protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  "This definition reveals Congress' intent to expand the concept of religious exercise contemplated in traditional First Amendment

15 - OPINION AND ORDER

jurisprudence." *Lewis v. Ryan*, No. 04cv2468 JLS(NLS), 2008 WL 1944112, at *28 (S.D. Cal. May 1, 2008)(citing *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (9th Cir. 2003)).

Although RLUIPA does not define what constitutes a "substantial burden" on religious exercise, the Ninth Circuit has noted the burden is substantial under RLUIPA when the state "'denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Shakur*, 514 F.3d at 888 (quoting *Warsoldier*, 418 F.3d at 995).

Under RLUIPA, Plaintiff "'bears the initial burden of going forward with evidence to demonstrate a *prima facie* claim' that the challenged state action constitutes 'a substantial burden.'" *Lewis*, 2008 WL 1944112, at *28 (quoting *Warsoldier*, 418 F.3d at 994).

> Once the plaintiff establishes that the challenged state action substantially burdens his religious exercise, the government bears the burden of establishing that the regulation serves a compelling government interest and is the least restrictive means of achieving that interest.

*Shakur*, 514 F.3d at 889.

**A.  Substantial burden**.

Defendants here contend their refusal to provide Plaintiff with a Kosher diet does not substantially burden Plaintiff's exercise of his religious beliefs because the Seventh

16 - OPINION AND ORDER

Day Adventist faith does not require Plaintiff to eat a Kosher diet. As noted earlier, however, "'[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" *Id.* at 884. The proper inquiry for the Court is whether Plaintiff's belief is sincerely held and the desired practice is "rooted in [his] religious belief." *Id.* at 885.

Plaintiff has established his belief that he must eat a Kosher diet is sincerely held and is rooted in his religious beliefs as a Seventh Day Adventist. It does not matter "under RLUIPA, that a [Kosher] diet may or may not be compelled by or central to" the Seventh Day Adventist faith." *Lewis*, 2008 WL 1944112, at *29 (quotation omitted).

Here Defendants' refusal to provide Plaintiff with a Kosher diet gives Plaintiff "a Hobsons's choice between options that are mutually unacceptable to his practice of his religious faith"; specifically, Plaintiff must choose between eating the non-Kosher diet that he believes is forbidden by his religion or changing his religious designation to Jewish to obtain Kosher meals. The Ninth Circuit has held "a prison policy that 'puts significant pressure on inmates . . . to abandon their religious beliefs . . . imposes a substantial burden on [the inmate's] religious practice.'" *Shakur*, 514 F.3d at 889 (quoting

*Warsoldier*, 418 F.3d at 996).

Based on this record, the Court concludes Defendants' refusal to provide Plaintiff with a Kosher diet imposes a substantial burden on Plaintiff's exercise of his religious beliefs.

**B.   Compelling interest.**

Defendants bear the burden to establish that their refusal to provide Plaintiff with a Kosher diet serves a compelling governmental interest.  42 U.S.C. § 2000cc-1(a). Defendants contend each additional inmate who receives a Kosher diet costs ODOC $2,000 per year and the cost to provide a Kosher diet to all Seventh Day Adventist inmates would exceed $5.5 million per year.  According to Defendants, therefore, they have a compelling governmental interest in refusing to provide Plaintiff with a Kosher diet.

The Supreme Court has acknowledged "maintain[ing] good order . . . consistent with consideration of costs and limited resources" is a compelling governmental interest.  *Cutter*, 544 U.S. at 722.  Here, however, the information regarding the potential cost of providing Kosher meals to all ODOC Seventh Day Adventist inmates is submitted in the Affidavit and Supplemental Affidavit of Tom O'Connor, Religious Services Administrator for ODOC Religious Services, rather than provided by an official specializing in food service or procurement.  In *Shakur*, the

18 - OPINION AND ORDER

Ninth Circuit noted it was "troubled by the district court's reliance" on an affidavit from the Arizona Department of Correction's Pastoral Administrator who did not have any personal knowledge or experience with food service or procurement, "especially because the government bears the burden of proving the existence of a compelling state interest." *Shakur*, 514 F.3d at 890.  The court, therefore, concluded the affidavit of the Pastoral Administrator did not contain "competent evidence as to the additional cost of providing . . . Kosher meat to ADOC's Muslim prisoners." *Id.*  In addition, the *Shakur* court noted ADOC had not provided any evidence that all Muslims in the ADOC system would request Kosher meals even if they were available to them. *Id.* at 890 n.8.  The court, therefore, declined to affirm the district court's grant of summary judgment.

As in *Shakur*, this Court concludes the Affidavits of O'Connor are not competent evidence of the additional cost of providing Kosher meals to ODOC's Seventh Day Adventist inmates because O'Connor is not an ODOC official specializing in food service or procurement and he does not allege any specific knowledge of ODOC food service procedures and costs.  Defendants also have failed to provide any evidence that all Seventh Day Adventist inmates in the ODOC system would request Kosher meals even if such meals were available to them.

For these reasons, the Court concludes Defendants have

not established a compelling governmental interest in refusing to provide Plaintiff with a Kosher diet.

**C.    Least restrictive means.**

Defendants also assert providing a Kosher diet to Jewish inmates only is the least restrictive means to conserve and to limit costs.  The Ninth Circuit has held, however, "a prison 'cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.'"  *Id*. at 890 (quoting *Warsoldier*, 418 F.3d at 996).  As noted, the record here contains only conclusory assertions that denying Plaintiff a Kosher diet is the least restrictive means of furthering Defendants' interest in cost containment.

The Court, therefore, concludes on this record that Defendants have not met their burden to establish their Kosher diet regulations are the least restrictive means of containing costs.  Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Plaintiff's claim under RLUIPA.

**III. Plaintiff's Equal-Protection Claim.**

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur*, 514 F.3d at 891 (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  "[T]he Equal Protection Clause entitles each

prisoner to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id.* (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)).

In *Shakur*, the Ninth Circuit explained the focus of an equal-protection inquiry in this context should be on Plaintiff's status as a Seventh Day Adventist. *Id*. Ultimately, Plaintiff's equal-protection claim cannot survive summary judgment "if the difference between the defendants' treatment of [Plaintiff] and their treatment of Jewish inmates is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *DeHart*, 227 F.3d 47, 61 (3d Cir. 2000)). Defendants here did not specifically analyze Plaintiff's equal-protection claim because, according to Defendants, it was subsumed in the analysis of Plaintiff's RLUIPA claim.

The Ninth Circuit has concluded the four-part *Turner* test governs equal-protection claims. *Id.* This Court already has concluded with respect to the *Turner* factors that Defendants have not established Plaintiff has alternative means by which he can practice his religion, that the impact of the requested accommodation on guards and other inmates and on the allocation of prison resources generally would be considerable, or that providing Plaintiff with a Kosher diet would place more than a *de minimis* burden on Defendants.

21 - OPINION AND ORDER

The Court, therefore, concludes on this record that Defendants have not established the difference between Defendants' treatment of Plaintiff and their treatment of Jewish inmates is reasonably related to legitimate penological interests.  Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Plaintiff's equal-protection claim.

## **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff moves for an order requiring Defendants to provide him with Kosher meals.  For the reasons noted, the Court concludes Plaintiff has established a probable chance of success on the merits of his action as well as the possibility of irreparable harm if Defendants fail to provide him with a Kosher diet.

Accordingly, the Court grants Plaintiff's Motion for Preliminary Injunction.

## **CONCLUSION**

For these reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction (#36) and **DENIES** Defendants' Motion for Summary Judgment (#54).

The Court directs Defendants to submit a proposed form of Preliminary Injunction consistent with this Opinion and Order **no later than September 2, 2008.**  The Court directs Plaintiff to

22 - OPINION AND ORDER

consider Defendants' proposed form and to advise the Court **no later than September 25, 2008,** whether Plaintiff has any objection to Defendants' proposed form.

Thereafter, the Court will schedule a Rule 16 conference to determine a plan to resolve the remaining issues in the case.

IT IS SO ORDERED.

DATED this 20th day of August, 2008.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


23 - OPINION AND ORDER